IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| JIMMY LADON GOLDEN, | : |
| Plaintiff, | : |
| VS. | : |
| | : **7 : 10-CV-99 (HL)** |
| ANITA STEWART, *et al.*, | : |
| Defendants. | : |

**RECOMMENDATION**

The Plaintiff, who is proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 on September 7, 2010, alleging Defendants were deliberately indifferent to Plaintiff's serious medical needs. (Docs. 2, 24). Presently pending in this action is Defendants' Motion for Summary Judgment (Doc. 33).

**Background**

Plaintiff alleges that he was arrested on April 29, 2010, after being attacked and beaten with a pipe at his home. (Doc. 2). The deputies who arrested Plaintiff allegedly took Plaintiff to the Colquitt County Jail ("CCJ") where he was not given medical treatment despite an open wound on his head and being able to "hardly walk". Plaintiff states that he was turned over to Tift County officers due to a probation violation in Tift County. The Tift County officers allegedly refused to book Plaintiff because of his injuries, and instead transported him to the hospital. Plaintiff asserts that a doctor ordered x-rays and a CT scan, and advised Plaintiff to see a primary care physician within three to five days. However, before Plaintiff was released from the hospital, Plaintiff states

1

that Colquitt County investigators re-arrested Plaintiff and charged him with aggravated assault stemming from the altercation which occurred on April 29, 2010.

Plaintiff alleges that he was given deficient medical treatment at CCJ following his discharge from the hospital by Defendants Arnita Steward, an LPN at CCJ, Cynthia McKinney, an LPN at CCJ, Larry Byrd, the chief jailer at CCJ, Hope Davis, an employee of CCJ, and Julius Cox, the jail captain at CCJ.[1]  Plaintiff states that he was not taken to a primary care physician as recommended by the hospital doctor, and was not seen by a doctor until the end of May 2010.  After Plaintiff was seen by a doctor, Defendants allegedly failed to provide Plaintiff with the follow-up appointments that were advised, and failed to provide Plaintiff with necessary pain medication.  Plaintiff alleges that, because of Defendants' deliberate indifference, he is in "severe pain," has difficulty sleeping, walking, and turning his neck, and suffers from "all kinds of problems."

Defendants filed their Motion for Summary Judgment on August 17, 2011. (Doc. 33).  On August 18, 2011, the Court notified the Plaintiff of the filing of Defendants' Motion for Summary Judgment, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order. (Doc. 37).  Plaintiff responded to Defendant's Motion for Summary Judgment on September 7, 2011. (Doc. 38).

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A party asserting that a fact cannot be or is

---

[1] Defendants' Motion refers to Defendants Arnita Steward and Cynthia McKinney.  While Plaintiff's pleadings refer to Defendants Anita/Arnita Stewart and Cynthia/Synthia McKurney/McKinney, Plaintiff and Defendants appear to be referring to the same Defendants.  Thus, the Court will presume that both Plaintiff and Defendants are referring to Defendants Arnita Steward and Cynthia McKinney.

genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials –including the facts considered undisputed – show that the movant is entitled to it". Fed R. Civ. P. 56(e)(3).

## Discussion

Plaintiff alleges that Defendants provided Plaintiff with deficient medical treatment for his serious medical needs. (Doc. 2). Plaintiff was a pretrial detainee at the relevant times, and as such, conditions of confinement imposed on him were governed by the Fourteenth Amendment Due Process Clause. *Andujar v. Rodriquez*, 486 F.3d 1199, 1203 n. 3 (11th Cir. 2007). "[T]he minimum

standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).  Therefore, for the purposes of the undersigned's analysis of Plaintiff's allegations, the Court will apply the Eighth Amendment deliberate indifference standards.  *Id.*

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  In order to show that a prison official acted with deliberate indifference to a serious medical need, Plaintiff must prove that there is an "objectively serious medical need" and the "prison official acted with deliberate indifference to that need."  *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

To establish the objective element, a prisoner must show that the medical need poses a substantial risk of serious harm if left unattended.  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious even a lay person would easily recognize the necessity for a doctor's attention."  *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds by *Hope v. Pelzer*, 536 U.S. 730 (2002).  A serious medical need can also be established if there is a delay in treatment that worsens the condition.  *Id.* at 1188-1189.  "In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation."  *Id.* at 1188.

To establish that a prison official acted with deliberate indifference to a serious need, Plaintiff must also show that the prison official had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence."  *Brown*, 387 F.3d at 1351.  A prison official's subjective knowledge of a risk is a question of fact as to which the

defendant "must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [ ] must also draw the inference." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2007) (emphasis in original) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)).

However, deliberate indifference must be more than a medical judgment call or an inadvertent failure to provide medical care. *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980). An inmate who receives adequate medical care, but disagrees with the mode or amount of treatment has not established deliberate indifference. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991).

In asserting that they are entitled to the entry of summary judgment, Defendants have submitted the affidavit of Defendant Steward. (Doc. 36). Defendants appear to concede that they were aware that Plaintiff was taken to the hospital and made several complaints regarding his alleged injuries. (Doc. 35). However, regardless of whether or not Plaintiff was suffering from a serious medical need, Defendants assert that they did not treat any alleged medical need with deliberate indifference.

Defendant Steward outlines Plaintiff's medical history and treatment at CCJ from April 30, 2010 until he was transferred from CCJ on June 10, 2011. (Doc. 36, Steward Aff.). The evidence shows that Defendant Steward completed an admission health screening on Plaintiff on April 30, 2010. (Doc. 36, Steward Aff. ¶ 12). Defendant Steward found Plaintiff to be alert and oriented, and his vital signs were normal. (*Id.*). Plaintiff informed Defendant Steward that he had been assaulted with a pipe prior to his arrest. (*Id.*).

The following day, Plaintiff arrived at the CCJ medical unit with a set of standard hospital discharge instructions. (*Id.* at ¶ 14). Plaintiff states that the discharge paperwork instructed him to

take Tylenol for pain, apply ice packs to the injured area, and be examined again in one (1) week if his back pain was not better. (Doc. 38-2, p. 5-6). Despite Plaintiff's failure to fill out an Inmate Sick Call Slip, Defendant Steward examined Plaintiff and noticed slight discoloration under Plaintiff's left eye. (Doc. 36, Steward Aff. ¶ 14). Defendant Steward also explained to Plaintiff that his discharge paperwork was not a doctor's orders. (*Id*.). Defendant Steward provided Plaintiff with ibuprofen due to Plaintiff's complaints of general pain and soreness. (*Id.*). That same day, Defendant Steward ordered copies of Plaintiff's medical records from Tift Regional, and non-party Dr. Khurana, a jail physician, prescribed pain medication for Plaintiff. (*Id.*).

Plaintiff was seen again by medical on May 19, 2010, after complaining of an abrasion on his left thigh. (*Id.* at ¶ 16). Defendant Steward cleaned and bandaged the wound, but noticed no other signs of distress or pain. (*Id.*). Plaintiff told Defendant Steward she needed to get more medical records from Tift Regional that would demonstrate additional injuries to Plaintiff. (*Id.*). Based on that information, Defendant Steward again called Tift Regional and a representative stated that all of Plaintiff's medical records had been forwarded to the jail. (*Id.*).

Two days later, on May 21, 2010, Plaintiff filled out another Inmate Sick Call Slip. (*Id.* at ¶ 17). Defendant McKinney reviewed the Sick Call Slip and examined Plaintiff the following day. (*Id*. at ¶ 18). Plaintiff's vital signs were normal, and Plaintiff did not demonstrate signs of pain when walking, turning his head, or climbing onto the examination table. (*Id.*). However, Plaintiff's shoulder "popped-in" during certain movements, so Defendant McKinney gave Plaintiff Tylenol to use on an "as needed" basis and scheduled Plaintiff to be seen by Dr. Khurana. (*Id.*). On May 28, 2010, Plaintiff was seen by Dr. Khurana, who prescribed Plaintiff with pain medication and ordered an x-ray of Plaintiff's shoulder. (*Id.* at ¶ 19).

An x-ray of Plaintiff's shoulder was taken at CCJ on June 1, 2010, and it showed normal

results.  (*Id.* at ¶ 21).  The x-ray film and radiology report were reviewed by non-party Dr. Laguerre, a jail physician, "who concurred the normal results found on the radiology report." (*Id.*). Throughout the rest of June, July, and the first week of August, Plaintiff was examined at least six times for complaints of pain in his neck, back, and left shoulder. (*Id.* at ¶¶ 23, 25, 27, 31, 35, 49). Additionally, Dr. Khurana reviewed Plaintiff's chart, x-rays from Tift Regional, and the jail x-rays and found normal results.  (*Id.* at ¶ 38).  Based on the information contained in the chart, Dr. Khurana prescribed Meloxicam to Plaintiff to help with pain and inflammation.  (*Id.*).  On July 16, 2010, it was ordered that Plaintiff be seen by an orthopedic, and so an appointment was scheduled with non-party Dr. Cordista, an orthopedic specialist.  (*Id.* at ¶¶ 42, 44).

Plaintiff was seen by Dr. Cordista for his neck, back, and shoulder pain on August 10, 2010. (*Id.* at ¶ 50).  Dr. Cordista prescribed Plaintiff with a steroid dose pack and pain medication, and scheduled a follow-up appointment for Plaintiff.  (*Id.*).  After the appointment Plaintiff continued to complain that he had pain and needed to follow up with Dr. Cordista.  (*Id.* at ¶¶ 52, 54, 58).  The medical staff continually informed Plaintiff that a follow-up appointment with Dr. Cordista had been scheduled.  (*Id.* at ¶¶ 52, 54, 56, 58).  On September 10, 2010, Plaintiff was seen by Dr. Cordista for his follow-up appointment. (*Id.* at ¶ 59).  Dr. Cordista prescribed medication for pain and instructed that Plaintiff be given an extra mattress. (*Id.*).   Upon return to CCJ, Defendant Byrd instructed that Plaintiff be given a cotton mattress. (*Id.*).

On October 6 and October 12 of 2010, Plaintiff again asked to see Dr. Cordista, and both times he was told that an appointment had already been scheduled.  (*Id.* at ¶¶ 66, 70).  Dr. Cordista examined Plaintiff on October 13, 2010, and prescribed a steroid dose pack and anti-inflammatory medication.  (*Id.* at ¶ 71).  Plaintiff continued to complain of pain in his back, neck, and left shoulder throughout January and February of 2011.  (*Id.* at ¶¶ 84, 86, 88, 93, 96, 103).  CCJ medical

staff told Plaintiff several times that he had an appointment scheduled with Dr. Cordista. (*Id.* at ¶¶ 87, 89, 94). On February 22, 2011, Plaintiff was again examined by Dr. Cordista, who prescribed Ultram for pain. (*Id.* at ¶ 105).

Per Dr. Cordista's orders, Plaintiff received an M.R.I. of his neck on March 21, 2011. (*Id.* at ¶ 110). The results showed a disc herniation and a bulging disc in Plaintiff's neck. (*Id.*). An x-ray also showed degenerative changes in Plaintiff's neck. (*Id.*). Plaintiff was prescribed Tramadol for pain. (*Id.*). Plaintiff was seen again by Dr. Cordista on April 29, 2011. (*Id.* at ¶ 117). Dr. Cordista referred Plaintiff to a pain clinic, where he was seen on May 12 and May 31 of 2011. (*Id.* at ¶¶ 117, 126, 130). On June 7, 2011, Dr. Cordista examined Plaintiff again. (*Id.* at ¶ 131). "Following his examination, Dr. Cordista prescribed Vicodin, . . . and he ordered Plaintiff to receive a mylelogram (sic) of his neck." (*Id.*). Plaintiff was transferred from CCJ to Leon County Jail in Florida on June 10, 2011. (*Id.* at ¶ 133).

In Plaintiff's Response to Defendants' Motion for Summary Judgment, Plaintiff admits that he was seen by Defendants Steward and McKinney on several occasions for his neck, shoulder, and back pain. (Docs. 38-2, 38-3). Further, Plaintiff states that he received an x-ray of his shoulder, was seen by Dr. Cordista at least five times, received an M.R.I., and was given several different types of medication to treat his neck, shoulder, and back pain. (*Id.*).[2]

The evidence shows that Plaintiff received adequate medical treatment for his complaints of neck, back, and shoulder pain. Plaintiff was given pain medication upon request, CCJ doctors took x-rays of Plaintiff's shoulder and found normal results, Plaintiff's Sick Call Slips were responded to

---

[2] Plaintiff also complained of other medical problems, such as toothaches and kidney pains, throughout his time at CCJ. As these complaints do not relate to the facts surrounding this lawsuit, the undersigned has not discussed these additional medical complaints and treatments.

by jail medical staff, and Plaintiff was examined or counseled on many occasions by the jail nurses and doctors. (*See generally* Doc. 36, Steward Aff.). Additionally, the jail doctors and administrators transported Plaintiff to an orthopedic specialist, Dr. Cordista, on at least six occasions, a pain clinic on at least two occasions, and transported Plaintiff to the hospital for an M.R.I. (*Id.*). While Plaintiff may disagree with the method and amount of treatment he received, the evidence shows that Defendants provided adequate medical treatment and pain medication to Plaintiff, and thus, were not deliberately indifferent to Plaintiff's medical needs. *See Barnes v. Martin County Sheriffs Dept.*, 326 Fed. Appx. 533, 536 (11th Cir. 2009) (finding that the defendants were not deliberately indifferent to an inmate's medical needs when the defendants provided the inmate with adequate medical treatment, regardless of the inmate desiring a different method of treatment); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("a simple difference in medical opinion" does not constitute deliberate indifference); *Kiley v. Andam*, 2006 WL 3667233 (N.D. Fla. Dec.12, 2006) (finding the defendant's response to the plaintiff's medical complaints was not constitutionally deficient when the plaintiff was seen by medical personnel at least eighteen times, was given Tylenol and other anti-inflammatory and pain relieving drugs, was referred to an orthopedic specialist, and the defendant took at least one set of x-rays of the plaintiff's back and shoulder).

    As Plaintiff did not provide the Court with evidence that refuted Defendants' showing that they were not deliberately indifferent to a serious medical need, no genuine issue of fact remains regarding Plaintiff's claim. Thus, Plaintiff's claim of deliberate indifference to a serious medical need cannot survive Defendants' Motion for Summary Judgment.

## Conclusion

    As Plaintiff has failed to sufficiently rebut Defendants' summary judgment showing, it is the

recommendation of the undersigned that Defendants' Motion for Summary Judgment be **GRANTED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 6th day of January, 2012.

s/ *THOMAS Q. LANGSTAFF*

**UNITED STATES MAGISTRATE JUDGE**

llf